UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Kinetic Systems Inc.,
      Plaintiff

      v.                                    Case No. 20-cv-1125-SM
                                            Opinion No. 2021 DNH 031

IPS-Integrated Project Services, LLC
and Lonza Biologics, Inc.,
      Defendants


**O R D E R**


        Kinetic Systems, Inc. brings this action for breach of
contract and quantum meruit, seeking nearly $14 million it
claims to be owed for work it performed on a construction
project in Portsmouth, New Hampshire.  In its complaint, Kinetic
advances three claims: breach of contract against the project's
general contractor, Integrated Project Services ("IPS") (count
one); quantum meruit/unjust enrichment against IPS (count two);
and, in the alternative, quantum meruit/unjust enrichment
against the project owner, Lonza Biologics (count three).
Defendants move to dismiss, saying Kinetic's claims are
premature.  In short, defendants allege that Kinetic has failed
to follow contractually-mandated prerequisites to filing suit.

For the reasons discussed, defendants' motion to dismiss is granted in part and denied in part.

## Standard of Review

In considering a motion to dismiss, the court accepts all well-pled facts alleged in the complaint as true, disregarding legal labels and conclusions, and resolves reasonable inferences in the plaintiff's favor.  See Galvin v. U.S. Bank, N.A., 852 F.3d 146, 155 (1st Cir. 2017).  To avoid dismissal, the complaint must allege sufficient facts to support a "plausible" claim for relief.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To satisfy the plausibility standard, the factual allegations in the complaint, along with reasonable inferences, must show more than a mere possibility of liability – that is, "a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  See also Lyman v. Baker, 954 F.3d 351, 359-60 (1st Cir. 2020) ("For the purposes of our [12(b)(6)] review, we isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements.") (citation and internal punctuation omitted).

In other words, the complaint must include well-pled (i.e., non-conclusory, non-speculative) factual allegations that, if

assumed to be true, allow the court to draw the reasonable and
plausible inference that the plaintiff is entitled to the relief
sought.  See <u>Tasker v. DHL Ret. Savings Plan</u>, 621 F.3d 34, 38-39
(1st Cir. 2010).


**Background**

Integrated Project Services ("IPS") was the general
contractor for a construction project owned by Lonza Biologics
in Portsmouth, New Hampshire.  Kinetic was a subcontractor on
that project.


IPS and Kinetic entered into two contracts related to the
Portsmouth project.  The first was signed in December of 2018,
and concerns mechanical work and plumbing services to be
supplied by Kinetic (document no. 9-3) (the "Early Mechanical
Contract").  The contract provides that, in exchange for its
services, Kinetic will be paid a fixed sum of $2,376,659.  The
second contract was signed in April of 2019, and concerns piping
work to be supplied by Kinetic (document no. 9-4) (the "Process
Contract").  That contract provides that, in exchange for its
services, Kinetic will be paid a fixed sum of $1,800,000.


As is customary in the construction industry, both
contracts provide a mechanism by which the parties agreed to

resolve issues arising from any changes to the scope of
Kinetic's work, including the amount Kinetic would be paid for
additional work.  Before performing any work beyond that
specified in the contracts, Kinetic is required to first give
IPS notice of a proposed change, submit documentation in support
of it, and obtain IPS's agreement to it.  <u>See</u> Early Mechanical
Contract at Section 6; Process Contract at Section 6.  If the
parties are unable to agree upon a price for Kinetic's
additional work, the contracts allow IPS to compel Kinetic to
perform the work (via "Change Directive"), after which the
parties are committed to agree upon an appropriate adjustment to
the amount to be paid to Kinetic.  That process of negotiating,
implementing, and paying for change orders is generally referred
to as the "Section 6 Project Level Negotiations."

     If the parties are unable to fully resolve any
disagreements through the Section 6 Project Level Negotiations,
the contracts provide the means by which they will resolve any
lingering disputes.  Section 12 of each contract, entitled
"Claims and Disputes between IPS and Subcontractor," sets forth
a mandatory three-step dispute resolution process.

     The claims or disputes "shall first be attempted to be
     resolved by good-faith negotiation between senior
     management of the Parties."

Second, if that process is unsuccessful, "then the
Parties agree to try in good faith to settle the
claims or disputes (or remaining portion thereof) by
mediation administered by the American Arbitration
Association."

Finally, if unresolved disputes remain, the contracts
establish a bifurcated dispute resolution process,
depending on the amount at issue.

> For disputes involving amounts less than
> $250,000, the parties agree that such disputes
> shall be resolved by arbitration.
>
> For disputes involving $250,000 or more, the
> parties agree that they may be resolved, at IPS's
> election, by either arbitration or by civil
> litigation to be filed exclusively in the state
> or federal courts of the Commonwealth of
> Pennsylvania.

See Early Mechanical Contract at Section 12.2; Process Contract

at Section 12.2 ("Section 12 Dispute Resolution") (emphasis

supplied).


The complaint alleges that Kinetic submitted, and IPS

approved, several large change orders for which Kinetic has not

yet been paid:

> The Early Mechanical and Process contracts, as
> amended, are referred to herein as the Contracts.  IPS
> implemented and the parties agreed to several large
> change orders under the Contracts pursuant to which
> Kinetics provided a substantial amount of additional
> labor and materials for consumption and/or use in
> Lonza's building(s) and systems.

> Defendant IPS repeatedly agreed that it would pay
> Kinetics for its material and labor costs associated
> with the Contracts, including all change orders.
>
> Kinetics reasonably relied upon these promises and
> inducements in performing work and providing materials
> to [the project].

Complaint (document no. 1-2) at paras. 15-17 (emphasis
supplied).  Moreover, the complaint alleges that Kinetic has
"complied with all material terms of the Contracts in providing
labor and material" to the project.  Id. at para. 24.  In total,
says Kinetic, it is owed approximately $3,650,000 under the
Early Mechanical Contract, and $10,320,000 under the Process
Contract.  Id. at para. 21.


According to Kinetic, the parties are at an impasse:
Kinetic says it has complied with all of its contractual
obligations, yet IPS refuses to approve its requests for
payment.  Moreover, IPS has ignored Kinetic's request that IPS
either invoke the arbitration provisions of the contracts or
bring a legal proceeding to resolve the parties' disputes.
Meanwhile, says Kinetic, IPS sits on roughly $14 million it is
properly owed and, at best, is slow-walking Kinetic through the
contractually-mandated dispute resolution process (conduct that,
if done in bad faith, could itself constitute a breach).

**Discussion**

I.   <u>Claims Against the General Contractor, IPS</u>.

In support of their motion to dismiss Kinetic's breach of contract claim against IPS, defendants dispute the complaint's assertion that Kinetic has "complied with all material terms of the contracts."  Rather, say defendants, Kinetic failed to follow the three-step, contractually-mandated dispute resolution process prior to filing this suit, claiming that when Kinetic filed suit, "project level negotiations under Section 6 had not concluded on approximately two-thirds of the proposed changes as required, and in fact continued well after Plaintiff filed suit. Much of Plaintiff's claim had yet to reach the Section 12 dispute resolution stage when suit was filed and none of the claim has completed that stage."  Defendants' Memorandum (document no. 9-1) at 2, n.1.  Consequently, say defendants, Kinetic's claims are premature and must be dismissed.[1]

Importantly, however, defendants' attacks on the veracity of the complaint's factual allegations rest entirely on evidence

---

[1]   Parenthetically, the court notes that IPS is <u>not</u> invoking the contracts' arbitration provisions.  Nor does IPS seek a transfer of this action to Pennsylvania, based upon the contracts' choice of venue provisions.  Rather, IPS simply seeks dismissal of Kinetics' claims, urging that they are premature and saying the parties have yet to complete negotiations over the proper amounts owed to Kinetic.

and affidavits extrinsic to the complaint and the parties'
contracts – matters more properly raised in the context of a
motion for summary judgment, after both sides have had the
opportunity to engage in meaningful discovery.  A motion to
dismiss is not the proper means by which to advance new factual
claims, challenge the factual allegations of the complaint, or
introduce extrinsic evidence of the sort upon which defendants
rely.  That the parties agreed to a specific means by which to
resolve their disputes is plain.  The extent to which they have
complied with those provisions and acted in good faith is, at
this juncture, unresolved.

    Kinetics' quantum meruit/unjust enrichment claim against
IPS fares less well.  Indeed, Kinetic implicitly recognizes as
much and does not object to its dismissal.  See Objection to
Motion to Dismiss (document no. 11).  As the New Hampshire
Supreme Court has noted, "unjust enrichment is an equitable
remedy that is available only in the absence of an enforceable
contract governing the matter."  Barlo Signs Int'l, Inc. v. GCD
Inc., No. 2017-0589, 2018 WL 3237974, at *2 (N.H. June 29,
2018).  Because the additional work for which Kinetic seeks
compensation from IPS is within the scope of the parties'
contracts - that is, the additional work is covered by change
orders contemplated by those contracts – Kinetic cannot pursue

equitable claims against IPS for those sums; its sole remedy lies in a breach of contract claim.  See generally Axenics, Inc. v. Turner Const. Co., 164 N.H. 659, 669–70 (2013).


II.  Claims Against the Project Owner, Lonza Biologics.

    On the other hand, Kinetic's equitable claims against Lonza Biologics, the project owner, are sufficient to survive defendants' motion to dismiss.  To be sure, "the circumstances under which an unjust enrichment claim may be brought by a subcontractor against an owner, absent privity, are limited." Axenics, 164 N.H. at 672 (citation and internal punctuation omitted).  Nevertheless, there may be "special circumstances that would justify requiring the owner to pay, such as when the owner accepts benefits rendered under such circumstances as reasonably notify the owner that the one performing such services expected to be compensated therefor by the owner."  Id. (citations omitted).  Another such circumstances appears to arise when the project owner has not fulfilled its financial obligations to the general contractor.  Id.


    Here, Kinetic has pled its quantum meruit/unjust enrichment claim against Lonza as an alternate theory of relief, "if Lonza has not paid in full for the labor, materials and benefits" supplied by Kinetic, "under such circumstances as to make it

inequitable and unjust for Lonza to retain the benefits without paying in full for their value."  Complaint at para. 39 (emphasis supplied).  <u>See generally</u> Fed. R. Civ. P. 8(d) (allowing alternate and even inconsistent claims).  At this juncture, the complaint's allegations are sufficient to survive a motion to dismiss.


### Conclusion

Count two of Kinetic's complaint (a claim for quantum meruit/unjust enrichment against IPS) fails to set forth the essential elements of a viable cause of action.  It must, then, necessarily be dismissed.


The remaining allegations of complaint adequately and plausibly allege the essential elements of viable claims against the named defendants: breach of contract against IPS (count one) and, in the alternative, quantum meruit/unjust enrichment against Lonza (count three).  A complaint need do no more than that to survive a motion to dismiss.  That defendants believe they have evidence that may undermine Kinetic's claims or, at a minimum, establish that good-faith negotiations are ongoing and Kinetic's claims are premature, are matters more appropriately raised in the context of either summary judgment or trial.

For the foregoing reasons, as well as those set forth in Kinetic's legal memorandum (document no. 11), defendants' motion to dismiss (**document no. 9**) is granted in part and denied in part.  Count two of Kinetic's complaint – that is, the equitable claims against IPS – is dismissed.  In all other respects, defendants' motion to dismiss is denied.


        **SO ORDERED.**

                                        _____
                                        Steven J. McAuliffe
                                        United States District Judge

June 4, 2021

cc:  John P. Sherman, Esq.
     Peter G. Callaghan, Esq.
     Christopher T. Hilson, Esq.
     Christopher D. Hawkins, Esq.