UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Kinetic Systems, Inc.

     v.                                  Case No. 20-cv-1125-SM
                                        Opinion No. 2024 DNH 071
IPS-Integrated Project
Services, LLC and
Lonza Biologics, Inc.


O R D E R

In this dispute between a project contractor and its
subcontractor, defendant IPS-Integrated Project Services, LLC
("IPS") moves for summary judgment on Kinetic Systems, Inc.'s
("Kinetics") reinstated quantum meruit claim.  Kinetics objects.
For the following reasons, the court grants the motion for
summary judgment.


Standard of Review

Summary judgment is appropriate when the moving party shows
that "there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a).  "A genuine dispute is one that would permit a
rational factfinder to resolve the issue in favor of either
party, and a material fact is one that has the "potential to
affect the outcome of the suit under the applicable law."
Gattineri v. Wynn MA, LLC, 63 F.4th 71, 84-85 (1st Cir. 2023)

(internal quotation marks omitted).  When resolving a motion for summary judgment, the court views the record in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor.[1]  Deaton v. Town of Barrington, 100 F.4th 348, 355 (1st Cir. 2024).

## Background

A.  Procedural Background

Kinetics's quantum meruit claim arises out of a commercial construction project in Portsmouth, New Hampshire.  Kinetics brought claims against IPS for breach of contract and quantum

---

[1] Kinetics continues to argue that it has no obligation to produce evidence in support of its quantum meruit claim because IPS has not carried its burden to show that it is entitled to summary judgment.  IPS has properly invoked the summary judgment procedure on the merits of the quantum meruit claim, and it is Kinetics that bears the burden of showing that a genuine factual dispute exists to avoid summary judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 & 325 (1986) (holding that Rule 56 does not require "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim" and instead the moving party may carry its initial burden "by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."); see also Washington v. City of St. Louis, Mo., 84 F.4th 770, 774 (8th Cir. 2023) (holding that defendants "were free to rely on the absence of evidence supporting the plaintiff's claims" in their motion for summary judgment).  On the other hand, however, when the moving party seeks summary judgment based on a defense, it "bears the burden of proof and cannot attain summary judgment unless the evidence that it provides on that issue is conclusive." Ouellette v. Beaupre, 977 F.3d 127, 135 (1st Cir. 2020) (internal quotation marks omitted).

meruit/unjust enrichment, seeking nearly $14 million for work it did on that project as a subcontractor.  The court previously dismissed the quantum meruit/unjust enrichment claim.  Doc. no. 15.  Later, the court granted summary judgment in favor of IPS on Kinetics's breach of contract claim to the extent it was based on amounts not paid on change proposals that were rejected as untimely.  Doc. no. 89.

Kinetics then moved to reinstate part of its previously-dismissed quantum meruit claim, on the ground that in the absence of a viable breach of contract claim for amounts not paid in response to the untimely change proposals, it was entitled to pursue an equitable remedy for those amounts.  The court allowed reinstatement over IPS's objection.  Doc no. 95.  IPS moved for reconsideration, raising defenses and challenging the quantum meruit claim on the merits.  The court directed IPS to move for summary judgment, which it has done.  Kinetics objects to summary judgment and filed a supplemental objection, as directed by the court.  IPS filed a response to the supplemental objection.

B.  Factual Background

Kinetics's work on the project was governed by two contracts: the Early Mechanical Subcontract and the Process Piping Subcontract.  Each Subcontract required IPS to pay

Kinetics a lump sum for the work specified.[2]   The Subcontracts

_____

[2] The parties do not provide a developed explanation of the operation of the lump-sum Subcontracts.  One court has found that "there are two broad types of construction contracts: lump-sum and time-and-materials contracts."  United States for use of WESCO Distribution, Inc. v. Greenleaf Constr. Co., Inc., Case No. 14-cv-315-RGE-CFB, 2018 WL 10262170, at *3 (S.D. Iowa (Feb. 15, 2018).  The two types operate as follows:

> Lump-sum contracts are defined by a set contract price.  The performing party is paid a lump sum for its performance and is not paid in direct relation to the time its employees work on a project or the materials it uses to complete a contract.  Under an archetypical lump-sum contract, the performing party therefore suffers any cost-overruns.  Lump-sum construction contracts provide the paying party a predictable cost for the contract, and are for that reason very attractive to general contractors hiring subcontractors for a complex project.

> Time-and-materials contracts, by contrast, compensate the performing party in relation to the time its employees work and the materials it uses.  Typically, when a performing party submits a time-and-materials bid, the party includes in the bid some mechanism to incorporate overhead costs and profit margin into its submitted labor and materials costs.  In a time-and-materials contract, the paying party therefore suffers any cost-overruns.  Time-and-materials construction contracts are rare where the contracting parties are beginning a project from scratch, but are more common where a performing party cannot easily estimate how much work must be completed.  A time-and-materials contract may include a cap on total contract price or other contractual provisions to prevent cost overruns.  For these reasons, a general contractor will typically exercise greater supervisory authority over a subcontractor in a time-and-materials contract than in a lump-sum contract.

Id.; see also Hall Contracting Corp. v. Entergy Servs., Inc., 309 F.3d 468, 475 (8th Cir. 2002); RMS of Wisc., Inc. v. S-K JV, No. 13-cv-1071, 2016 WL 2853539, at *2 (E.D. Wisc. May 16,

also included provisions for changing the scope of work, increasing the time allowed and the amount to be paid, and resolving disputes about changes and payments.

During its work on the project, Kinetics sought payment from IPS under the Subcontracts through applications for progress payments.  It also sought payment for extra work not covered by the Subcontracts through change proposals that were governed by certain terms in the parties' Subcontracts.  The amounts sought in change proposals that remain in dispute were included in proposals not submitted within the time allowed under the Subcontracts, and IPS rejected them.

To receive a progress payment, Kinetics submitted an application that included a "Subcontractor Partial Waiver and Release."[3]  Doc. no. 98-3, at 1.  The release clause provided

---

2016).  Other construction contracts may include different pricing structures, such as "lump sum, provisional lump sum (cost plus a percentage markup), unit rate, or time and materials."  Kiewitt Offshore Servs., Ltd. v. Dresser-Rand Global Servs., Inc., No. H-15-1299, 2016 WL 4564472, at *13 (S.D. Tex. Sept. 1, 2016).

[3] IPS filed with its motion for summary judgment a declaration from Anthony Malvone, IPS's Operations Manager for the Lonza program.  Malvone states that Kinetics submitted 28 signed releases with applications for progress payments.  IPS also filed an exhibit with copies of releases that appears to include 10 signed "Subcontractor Partial Waiver and Release" forms, 1 undated and unsigned form, and 3 forms titled "Partial Release" that are different from and shorter than the "Subcontractor Partial Waiver and Release" forms.  Because IPS cites and relies only on the signed "Subcontractor Partial

that it "shall constitute a partial release of all debts,
rights, claims, damages and demands of Releasor against
Contractor, Owner and any surety, in law or in equity, arising
out of or pertaining to the above referenced Project through
the date of this Release and to the extent of the amount(s) paid
to date heretofore and hereunder." Id.  The release clause also
provided:  "The release is given to the extent of, and for and
in consideration for, a progress payment for the Project in the
amount of $ _____ and other good and valuable consideration."
Id.  The release was further limited as follows:

> This Release shall not otherwise affect rights or claims
> between Contractor and Releasor based upon a rescission,
> abandonment, breach of any Contract, or the right of
> Releasor to recover compensation for any Work and
> Services for the Project if Releasor has not been
> compensated therefor.  In addition, notwithstanding
> anything to the contrary herein, Releasor does not
> release any legal or equitable remedy available to it
> which may arise out of any disputed claim(s) identified
> on any attached Exhibit "1" to this Attachment "C-1", if
> any such claim(s) exist.  If there is no such Exhibit
> "A" attached hereto then the absence thereof shall be
> any acknowledgement and warranty by Releasor that no
> such claims exist.

Id.  Kinetics applied for progress payments from IPS, signed
releases, and accepted the payments.  IPS did not pay other
amounts, submitted in untimely change proposals, and Kinetics
seeks to recover those amounts through its quantum meruit claim.

---

Waiver and Release" forms, the court will not consider the other
forms for purposes of summary judgment.

Discussion

IPS moves for summary judgment on Kinetics's quantum meruit claim on the grounds that the releases that Kinetics signed bar a claim for quantum meruit, and, Kinetics cannot prove the elements of a quantum meruit claim.[4]  Kinetics objects to summary judgment, contending that that the releases do not bar its quantum meruit claim or are ambiguous in that regard, and that it has provided sufficient evidence to demonstrate a triable factual dispute.  For the reasons that follow, the court grants summary judgment on the merits of the quantum meruit claim.

A.  Releases

IPS contends that the partial release and waiver forms Kinetic signed with each progress payment bar it from bringing the quantum meruit claim.[5]  Kinetics does not dispute that it

---

[4] IPS also argues that Kinetics failed to allege a quantum meruit claim and, instead, alleged only unjust enrichment, which is no longer a claim in the case.  Although IPS successfully moved to dismiss the quantum meruit claim early in the case, it did not challenge the sufficiency of the pleading.  Doc. no. 15.  Because the distinction between the two equitable remedies is primarily the measure of damages, see Gen. Insulation Co. v. Eckman Constr., 159 N.H. 601, 612 (2010), and because summary judgment is granted on the merits, it is not necessary to address the sufficiency of the pleading.

[5] In its statement of undisputed facts, IPS notes that the Subcontracts each included waiver or release provisions as follows:

signed the release forms for purposes of receiving progress

payments and does not dispute that it did not list any disputed

claims for payment in an attachment to any of the releases.

Kinetics contends, however, that the language of the releases

allows its claim for payment under quantum meruit or,

alternatively, that the language is ambiguous.  Kinetics also

contends that the parties agreed to waive the requirement that

it list disputed claims to preserve those claims.  Because IPS

raises the effect of the releases as an affirmative defense

against the quantum meruit claim, it bears the burden of

showing, for purposes of summary judgment, that the evidence

conclusively establishes that the releases bar Kinetics's claim.

Ouellette, 977 F.3d at 135.

---

> The acceptance by Subcontractor of each progress
> payment from IPS shall constitute a waiver and release
> by Subcontractor of all claims of any kind against IPS
> for payment for Work performed up to the date of
> Subcontractor's estimate for payment against which
> payment was made and accepted, excluding only
> Subcontractor's entitlement to retainage withheld in
> connection with such payment and any disputed amount
> withheld from payment by IPS.  Acceptance of Final
> Payment shall constitute a waiver and complete
> discharge of all claims by Subcontractor except those
> previously made in writing and identified by
> Subcontractor as unsettled at the time of approval by
> IPS of the Final Invoice.

Doc. no. 57-2, at 24, § 7.9.  IPS, however, addresses the
partial waiver and release forms but does not make an argument
that the release or waiver provisions in the Subcontracts bar
Kinetics's quantum meruit claim.  The court, therefore, will not
address the effect, if any, of that waiver or release.

Principles of contract law govern agreements to release liability.  See Mentis Sciences, Inc. v. Pittsburgh Networks, LLC, 173 N.H. 584, 591-92 (2020) (construing limitation of liability provision under New Hampshire contract law).  "Parties to a contract are generally bound by the terms of an agreement freely and openly entered into."  Id.  Specifically, releases signed by subcontractors in consideration for progress payments made during a construction project may foreclose a claim seeking payment for work or supplies that occurred or existed before the release was signed.  See, e.g., Connelly Constr. Corp. v. Travelers Casualty & Surety Co. of Am., 788 F. App'x 122, 124-25 (3d Cir. 2019); MAFCO Elec. Contractors, Inc. v. Turner Constr. Co., 357 F. App'x 395, 397 (2d Cir. 2009).  A quantum meruit claim may be waived only when there is "some explicit understanding between the parties that quantum meruit for extras would be barred."  R.J. Berke & Co., Inc. v. J.P. Griffin, Inc., 116 N.H. 760, 765 (1976).

IPS submitted partial waiver and release forms dated between March 19, 2019, and July 20, 2020, with the provisions described above in the background section.[6]  Although IPS does not explicitly address the issue, the releases appear to cover the period of the extra work claimed in Change Proposal ("CP")

---

[6] One form is not dated.

10 and CP-24.  IPS contends that through those releases, which
did not include any exempted claims, Kinetics released and
waived its quantum meruit claim.

Under New Hampshire law, courts interpret a contract by
reading the document as a whole.  <u>Birch Broad., Inc. v. Capitol
Broad. Inc.</u>, 161 N.H. 192, 196 (2010).  Reading all of the
provisions in the release or waiver forms as a whole, they
appear to apply to claims in law or in equity brought by the
Releasor, Kinetics, under either of the Subcontracts for work,
labor, materials, and other services and supplies, up to the
amount of the progress payment made for each release.  The forms
include broad language as to the claims released or waived but
do not explicitly name quantum meruit as a released or waived
claim.  Importantly, the forms also appear not to apply to
claims to the extent they exceed the amount of the progress
payment, to claims in which the Releasor seeks to recover
compensation for work or services provided on the Lonza project
that have not been compensated, and to claims listed as disputed
on an attachment.

Based on that interpretation, IPS has not provided
conclusive evidence that the release or waiver forms would bar
Kinetics's entire quantum meruit claim, or even part of it,
despite Kinetics's failure to list the quantum meruit claim on
the required attachments for disputed claims.  For that reason,

IPS has not shown on the present record that the forms signed by Kinetics bar the quantum meruit claim.

B.  Merits

   IPS contends that the quantum meruit claim should not have been reinstated because Kinetics did not materially breach the Subcontracts, which IPS contends is a requirement of a quantum meruit claim under R.J. Berke & Co., Inc. v. J.P. Griffin, Inc., 116 N.H. 760 (1976).  IPS further contends that even if the claim were properly reinstated, Kinetics cannot prove that it incurred the disputed costs with IPS's knowledge and consent or that Kinetics could reasonably have expected payment under the circumstances.  Kinetics argues that it has properly brought and can prove a quantum meruit claim.

   1.  Application of Berke

   The general rule is that a party cannot bring and maintain a claim for quantum meruit when that claim is governed by the parties' contract.  Doc. no. 15, at 8 (quoting Barlo Signs Int'l, Inc. v. GCD Inc., No. 2017-0589, 2018 WL 3237974, at *2 (N.H. June 29, 2018)).  As the New Hampshire Supreme Court held in Berke, 116 N.H. at 764, however, a party without available contract remedies, because of its own material breach of the contract, may pursue restitution through a claim for quantum

meruit.  See also Axenics, Inc. v. Turner Constr. Co., 164 N.H. 659, 670-71 (2013).  IPS argues that Berke does not apply in this case, because Kinetics did not materially breach the Subcontracts, and, instead was deprived of contract remedies due to its own failure to meet the condition precedent for payment - submitting timely change proposals - under the Subcontracts.

The New Hampshire Supreme Court has not applied its holding in Berke outside the context of a plaintiff's material breach. Other courts, however, have concluded that failure of a condition precedent, that precludes a contract remedy, allows for restitutionary remedies under quantum meruit.  See, e.g., Aniero Concrete Co., Inc. v. N.Y. City Constr. Auth., Case No. 94-cv-3506-CSH, 2000 WL 863208, at *7 (S.D.N.Y. June 27, 2000); see also Aetna Cas. & Suf. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 611-12 (2d Cir. 2005); Greenberry Indus., LLC v. ESI, Inc. of Tenn., No. 22-cv-206-TWT, 2022 WL 17584421, at *6 (N.D. Ga. Dec. 12, 2022); Gamble v. Corley, Moncus & Ward, P.C., 723 So. 2d 627, 631 (Ala. 1998).

It is undisputed that Kinetics did not comply with the time requirement in the Subcontracts for submitting change proposals. For that reason, Kinetics lost contract remedies available to recover amounts it sought in the change proposals.  Whether the untimely change proposals constituted material breaches of the terms of the Subcontracts, or failures to comply with a

condition precedent to payment under the Subcontracts, Kinetics
still lost its contract remedies.  IPS has not shown that it is
entitled to summary judgment as a matter of law, because the
circumstances of the contract breach in Berke were materially
distinguishable from the circumstances in this case.


            2.   Quantum Meruit

        "Quantum meruit provides an equitable remedy for such
plaintiffs who are justified in some recovery notwithstanding
their inability to recover in contract."  Collision Comm'ns,
Inc. v. Nokia Solutions & Networks OY, 687 F. Supp. 3d 201, 220
(D.N.H. 2023).  Without a quantum meruit remedy, plaintiffs
unable to seek payment under the parties' contract because of
their own breach would not be paid for their work.  See Berke,
116 N.H. at 764.  New Hampshire requires proof of three elements
to succeed on a quantum meruit claim: "(1) services were
rendered to the defendant by the plaintiff; (2) with the
defendant's knowledge and consent; and (3) under circumstances
that make it reasonable for the plaintiff to expect payment."
Collision, 687 F. Supp. 3d at 220.


            a.   Uncompensated work

        Kinetics contends that it provided extra work on the Lonza
project, in addition to the work covered by the lump-sum

13

Subcontracts, and it seeks payment for that work, as described

in CP-10 and CP-24.[7]  IPS asserts that Kinetics completed the

work as required by the Subcontracts and was paid in full.  That

is, IPS asserts that Kinetics, by requiring that the

Subcontracts be lump-sum contracts and by signing lump-sum

Subcontracts, accepted the agreed lump-sum payments to complete

the work required and assumed the risk of running over budget.[8]

---

[7] Kinetics also references "many bulletins" from IPS that
required extra work (doc. no. 102, at 6), but it did not file
copies of the referenced bulletins in support of its objection
to summary judgment.  Kinetics's citations to the court's prior
summary judgment order, instead of to the bulletins themselves,
is not sufficient.  For that reason, the court does not consider
payment for extra work allegedly required in bulletins as part
of the quantum meruit claim.  Even if the court were to consider
extra work required under bulletins, the requests for extra work
under the bulletins were also not submitted on time, and the
same reasons for denying the quantum meruit claim for CP-10 and
CP-24 would apply.

Kinetics states that instances of extra work because of
IPS's inefficiencies are shown in Robert Brooker's deposition
testimony and Dr. William Ibbs's expert report.  Brooker
testified that Kinetics had to do extra welds on pipes because
of a redesign, which appears to be the same work that is covered
in CP-10 and CP-24.  Dr. Ibbs's expert report is 122 pages long,
and Kinetics failed to cite parts or pages where Dr. Ibbs
addressed extra work due to inefficiencies.  The court will not
search for information about Kinetics's extra work to support
the quantum meruit claim.  See Morales v. A.C. Orssleff's EFTF,
246 F.3d 32, 35 (1st Cir. 2001).

[8] In support, IPS cites Kinetics's bid proposal for the
project, with certain parts highlighted:
     Joining for NALCD
          PVDF Fusion
      Kinetics has included Cut and Drop of Ductwork
      Kinetics has included Chiller pipe extensions with
     future butterfly valves.

(1).  <u>Scope of Subcontracts</u>

Kinetics contends that the amounts it is seeking under CP-
10 and CP-24 are for work that is outside the scope of the
Subcontracts.[9]  It is undisputed that the Subcontracts provided a

---

> <mark>Kinetics has included allowance for Steam and Steam
> Cond pipe reroute.</mark>
>  Kinetics to cut into existing lines and provide tees,
>     valves for each break.
>  Pipe Insulation, Pipe Labeling and Valve tagging
> included per Lonza standards.
>  Kinetics assumes a <mark>ten (10) month</mark> schedule to
> complete this work.  General Conditions are based on
> this duration.  Kinetics' General Conditions are
> subject to change based on the actual project
> duration.

Doc. no. 57-24, at 4.  Absent some explanation, which IPS did
not provide, of what work is related to the highlighted parts,
the cited exhibit does not show that Kinetics assumed the risk
of the cost overruns in CP-10 and/or CP-24.

---

[9] In the supplemental objection, Kinetics argues that IPS's
changes to the project caused a "cardinal" change and invokes
the cardinal change doctrine.  Kinetics cites Robert Brooker's
deposition testimony where he stated that the changes in the
Lonza project were "basically a cardinal change" and were "like
a hundred percent difference."  Doc. no. 102, at 4.  The
cardinal change doctrine "provides a breach remedy for
contractors who are directed by the government to perform work
which is not within the general scope of the contract."  <u>United
States v. Peter R. Brown Constr., Inc.</u>, 674 F. App'x 901, 909
(11th Cir. 2017).  A cardinal change occurs when a contractor
performs work that is "materially different from that specified
in the contract" as ordered by the government, and "a cardinal
change amounts to an actual breach of contract."  <u>Bell/Heery v.
United States</u>, 739 F.3d 1324, 1335 (Fed. Cir. 2014).  In that
event, the normal procedures for contract changes or adjustments
would no longer apply.  <u>Peter R. Brown</u>, 674 F. App'x at 909.
Kinetics did not raise the cardinal change doctrine until the
supplemental objection and has not shown through evidence

means for Kinetics to receive additional payments for approved
increases over the lump-sum amounts.  As such, IPS has not
shown, based on undisputed facts, that the lump-sum payments
under the Subcontracts necessarily included the additional
amounts in CP-10 and CP-24 that Kinetics is now claiming through
quantum meruit.


(2).  <u>Additional work claimed</u>

Kinetics submitted CP-10 on December 20, 2019, under the
Early Mechanical and Plumbing Subcontract, for Process Drain
Scope Additions.  Doc no. 102-3.  CP-10 appears to be a follow-
up to CP-4 that was previously submitted by Kinetics and
accepted by IPS.  The description of the change in the scope of
work is as follows:

> This change order includes the material and labor
> costs for the installation of the process plumbing
> drains on the Lonza NG3M project above and beyond that
> which was accepted in IPS SCO #0002 (KSI CP-004).  The
> additional pipe footages and fitting quantities were
> derived from an export of the current BIM model
> Material pricing and direct labor is included for the
> difference between the current model quantities and
> those in CP-004.  Revisions to the design model
> provided on 12MAR19 to meet plumbing code and resolve
> clashes with other trades resulted in additional BIM

comparing the Subcontracts to the changed scope of the work that
the changes in the Lonza project amount to a "cardinal change."
Further, Kinetics seems to invoke the cardinal change doctrine
simply to support the propriety of a quantum meruit claim, which
is otherwise allowed because Kinetics lost its contractual right
to a remedy.

manhours exceeding the budget in CP-004.[10]

> This additional modeling time delayed ISO generation,
> fabrication, and installation of the plumbing drain
> scope, causing Kinetics to work concurrently with the
> other trades in field.  An increased labor factor has
> been added for the installation of additional material
> on elevations of 90' and 113' as well as the manhours
> included in CP-004 for those floors.  Elevations 66'
> and 136' are factored the same as CP-004 since
> stacking of trades was minimal in these areas.

Doc. no. 102-3, at 2.  The total amount sought in CP-10 was

$5,168,045.53.[11]

CP-24 is dated June 20, 2020, and the short description of

the change proposal is "Additional Welds."  Doc. no. 102-4, at

1.  The description of the changed scope of the work is:  "This

proposal includes supplemental work on the process scope

involving additional welds made due to design changes, field

impacts, and coordination issues."  Doc. no. 102-14, at 2.  The

total cost of that change proposal was $5,627,003.00.

CP-10 and CP-24 provide evidence that Kinetics did work for

IPS that Kinetics believed was in addition to the Subcontract

work.  Taking those facts in the light most favorable to

Kinetics, a factual dispute exists as to whether Kinetics did

---

[10] BIM is not defined in the parties' memoranda but may be a
group that worked for Kinetics to route pipe, "create isometrics
for fabrication," and "check for code like slope and vents."
Robert Brooker depo., doc. no. 102-1, at 47.

[11] Part of the amount sought in CP-10 was paid later through
the negotiation process, with the result that Kinetics is not
seeking the entire amount of CP-10 through quantum meruit.

uncompensated work for IPS on the project as described in those change proposals.

### b.  IPS's knowledge and consent

Kinetics contends that it provided the services described in CP-10 and CP-24 with IPS's knowledge and consent because IPS directed Kinetics to do the work in the original scope of the Subcontracts with additional work included through change orders.  To support the quantum meruit claim, however, the work done under CP-10 and CP-24 could not have been within the original scope of the Subcontracts because, if so, it would have been compensated through the Subcontracts' lump-sum payments. It is undisputed that IPS did not approve CP-10 or CP-24 and did not issue a change order for either proposal.  To the extent Kinetics represents that the work described in CP-10 and CP-24 was directed by IPS under the Subcontracts, it cannot support a quantum meruit claim.

To the extent Kinetics argues that it is entitled to compensation for the amounts claimed in CP-10 and CP-24 because that work was approved as additional work under the Subcontract procedures, the record does not support that theory.  It is undisputed that Kinetics submitted CP-10 and CP-24 after it did the work and that IPS did not approve CP-10 or CP-24 (although part of CP-10 was later allowed through negotiation).  The

change proposals and the process that resulted in their denial
do not show that IPS knew of and consented to that work.

Kinetics also provides a list of 20 statements with
citations to record evidence to show that it did the work
described in CP-10 and CP-24 with IPS's knowledge and consent.
The cited deposition testimony and other evidence show that
Kinetics's employees believed that issues with the project
model, project design, and IPS's schedule caused Kinetics's work
to take longer and cost more than Kinetics planned.  The cited
evidence also indicates that some IPS employees working on the
project may have known that Kinetics's employees were doing
certain work or even extra work and may have told Kinetics's
employees to proceed.  Kinetics's also cites evidence that IPS
added personnel to supervise Kinetics employees.

As discussed above, the Subcontracts provided a process for
Kinetics to be paid for extra work, which Kinetics followed as
to some work but not the work for which it seeks payment in CP-
10 and CP-24.  Kinetics's failure to follow that process means,
for purposes of the quantum meruit claim, that Kinetics must
show that IPS had actual knowledge of the extra work it claims,
and that IPS consented to Kinetics doing that work despite
Kinetics's failure to follow the contractual change proposal
process.  Kinetics cites no evidence that IPS (rather than
Kinetics employees and some IPS employees working on the project

19

in the field) knew that Kinetics was doing work beyond the scope

of the Subcontracts (specifically the work claimed in CP-10 and

CP-24) and consented to have that extra work done for extra

compensation over and above the contractual lump sums.

Kinetics has not provided evidence to raise a genuine

dispute of material fact, i.e., whether it did extra work,

described in CP-10 and CP-24, with IPS's knowledge and consent.

Even if that showing were made, however, the quantum meruit

claim fails at the next step.


c.   Reasonable expectation of payment

Kinetics contends that it had a reasonable expectation of

payment for the work described in CP-10 and CP-24 because the

Subcontracts provided a means for Kinetics to claim increases in

the Subcontract price in Section 6.12.1.  As Kinetics readily

acknowledges, however, Section 6.12.1 required claims to be made

within two business days following the event that gave rise to

the claim.  Kinetics admits it did not make claims within the

time required under Section 6.12.1.[12]  Therefore, Kinetics has no

_____

[12] Kinetics purports to believe that its failure to comply
with contract requirements for payment is excused for purposes
of its quantum meruit claim and it can rely on those provisions
as a reasonable basis to have expected payment.  It is mistaken.
A quantum meruit claim requires proof that the plaintiff
reasonably expected payment under the existing circumstances,
even though payment was not available under the parties'
contract, such as because the defendant knew of the plaintiff's

reasonable expectation of payment under Section 6.12.1 of the
Subcontracts.

Alternatively, Kinetics cites excerpts from the depositions
of Kinetics's and IPS managers and other evidence to show IPS
knew and consented to the work described in CP-10 and CP-24 and
promised payment.  The cited evidence, however, merely affirms
that the project was behind schedule, that extra work was
needed, and that the Subcontracts provided a means for Kinetics
to claim payment for any extra work.[13]  Because Kinetics did not
comply with the contractual requirements to claim payment for
extra work, through Section 6.12.1 and through timely change
proposals, it could not reasonably expect payment under those
provisions.  Further, the fact that IPS eventually paid part,

---

effort to accomplish the work, the plaintiff told the defendant
it expected payment for that work, and the defendant did not
refuse payment before the work was done.  See Collision, 687 F.
Supp. 3d at 220.  Importantly, the plaintiff must request
payment before doing the work and have a reasonable basis to
believe it will be paid.  Mangiardi Bros. Trucking, Inc. v.
Dewey Env'l, LLC, 2013 DNH 069, 2013 WL 1856338, at *7 (D.N.H.
Apr. 30, 2013); see also Universal Am-Can, Ltd. v. CSI-Concrete
Sys., Inc., 2012 DNH 115, 2012 WL 2627764, at *2 (D.N.H. July 5,
2012).

[13] In fact, Ryan Murphy, a Kinetics manager, testified in
the cited part of the deposition that he did not remember
telling IPS about additional costs at the time that Kinetics was
incurring those costs.  Anthony Malvone, an IPS manager,
testified in the cited part of his deposition that even if
Kinetics had submitted a change proposal for costs caused by
implementing a night shift after they were told to catch up to
the schedule, it would not have been approved because Kinetics
was falling behind due to their own inefficiencies.

but not all, of the claimed amount in CP-10 does not show that Kinetics could reasonably expect to be paid for all of the work in CP-10 when it did the work.  The email from Michael DiBacco of IPS to Robert Brooker of Kinetics, dated August 3, 2020, which Kinetics cites, makes clear that IPS never agreed to pay the claimed amounts in CP-10 and only negotiated some parts of the claims after the fact.  Kinetics provides no evidence that IPS agreed to pay extra amounts for the work described in CP-10 and CP-24 (outside the negotiated amounts).

As such, Kinetics has not shown a triable issue as to whether it had a reasonable expectation of payment for the work described in CP-10 and CP-24.  IPS is entitled to summary judgment on Kinetics's quantum meruit claim.


## Conclusion

For the foregoing reasons, IPS's motion for summary judgment (document no. 98) is granted.  The quantum meruit claim is dismissed.  The claim remaining in the case for trial is that part of the breach of contract claim in Count I that was not resolved on summary judgment in the court's prior summary judgment order (document no. 89).

Trial is currently scheduled in this case for November 13, 2024, and the pretrial conference is scheduled for October 30, 2024.  The issues for trial are now definite.  Before the

parties and the court spend the time and resources necessary to prepare for trial, the court expects counsel to discuss settlement of the remainder of Kinetics's claim and to use their best efforts to resolve the case.


        SO ORDERED.

                                    _____
                                    Steven J. McAuliffe
                                    United States District Judge

September 3, 2024

cc: Counsel of Record