```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

Kinetic Systems, Inc.

    v.                                    Case No. 20-cv-1125-SM
                                               Opinion No. 2025 DNH 040

IPS-Integrated Project
Services, LLC and
Lonza Biologics, Inc.


O R D E R

Following jury verdicts in favor of Kinetic Systems, Inc. and Lonza Biologics, Inc., in this commercial construction contract case, all three parties moved for an award of attorneys' fees under provisions in the Subcontracts. The primary issue is which of them is a "prevailing party" within the meaning of § 17.7 of the Subcontracts. For the reasons that follow, Kinetics's motion is granted in part, and IPS's and Lonza's motions are denied.

Background

Kinetics filed suit in state court in October of 2020, seeking to recover $13,973,898.26 that it claimed IPS and Lonza owed it under the Subcontracts, or alternatively, through a claim for quantum meruit/unjust enrichment. Doc. 1-2. The defendants removed the case to this court and moved to dismiss the claims. The court dismissed only the quantum meruit/unjust

enrichment claim, based on the viability of the breach of contract claim. Doc. no. 15.

The case proceeded through discovery (which included a motion for a writ of replevin against Kinetics by Lonza to recover turnover package documents and a challenge to Kinetics's expert witness). Kinetics voluntarily dismissed its claims against Lonza. The trial scheduled in September of 2023 was continued due to Kinetics's counsel's medical issue. Counsel withdrew from representation, and new counsel filed an appearance on behalf of Kinetics in December of 2023.

The court granted IPS's partial motion for summary judgment to the extent the breach of contract claim in Count I was based on amounts that IPS failed to pay in response to change orders CP-10 and CP-24 and the Bulletin Change Proposals that were rejected as untimely. The court reinstated the quantum meruit claim, but allowed IPS to move for summary judgment, which was granted.

After those proceedings, Kinetics's breach of contract claim, Count I, remained as to claims for back charges, which totaled $2,227,028.98, for Change Order 009 and a back charge invoice and for reductions in amounts paid on the Process Subcontract, as supported by Exhibits 1 and 2 to document no. 91. The court dismissed four of Lonza's counterclaims against Kinetics, leaving Lonza's breach of contract and violation of the New Hampshire Consumer Protection Act claims.

2

The court held a six-day jury trial on Kinetics's breach of contract claim against IPS and Lonza's breach of contract claim against Kinetics.  Following trial, the court dismissed the Consumer Protection Act claim.  The jury returned a verdict on Kinetics's breach of contract claim, finding that IPS improperly back charged $444,875.53 against the amount Kinetics claimed.  The jury also found that Lonza proved that Kinetics breached one or both Subcontracts, but awarded no damages to Lonza.  Doc. no. 148.

Kinetics renewed its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) post trial, which the court denied.  Doc. no. 163.  Lonza moved to amend the judgment entered by the clerk of court to show that the jury found in its favor on the breach of contract claim but awarded no damages.  The court granted that motion, and an amended judgment was entered.  Doc. no. 165.  Kinetics, IPS, and Lonza each moved for an award of attorneys' fees and costs.

## Discussion

Under New Hampshire law, parties generally bear their own litigation costs, but the court may award attorneys' fees and costs to a prevailing party when that recovery is authorized by an agreement among the parties.  In re J.P., 173 N.H. 453, 466, 242 A.3d 823, 834 (2020).  All three motions seek fees and costs under the following provision in the Subcontracts:

3

> § 17.7  If any legal action, arbitration, or other
> proceeding is brought for the enforcement of this
> Agreement, or because of an alleged dispute, breach,
> default, or misrepresentation in connection with any of
> the provisions of this Agreement, successful or
> prevailing Party or Parties will be entitled to recover
> reasonable attorney fees and other costs authorized by
> Statute which are incurred in that action or proceeding,
> in addition to any other relief to which they may be
> entitled.

Doc. no. 57-8, at 43.  In addition, IPS mentions § 6.10 to support its request for fees and costs:

A.  Section 6.10 – IPS

IPS argues briefly that it is entitled to an award of fees and costs under § 6.10,[1] which provides as follows:

> In the event the Subcontractor submits an adjustment request for a Change that has no merit or that is based in whole or in part upon materially inaccurate assertions, IPS shall be entitled to collect from Subcontractor by offset or otherwise any and all costs and expenses, including but not limited to reasonable attorney's fees, incurred by IPS investigating, responding to, defending against and resolving such claim or request.

---

[1] Given the lack of developed argument by IPS to support an award under § 6.10, that theory is likely waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."); see also Wadsworth v. Nguyen, No. 23-1463, 2025 WL 547405, at *19 (1st Cir. Feb. 19, 2025); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed.").

Id., at 22.  Taken in context and particularly in light of the attorneys' fees provision in § 17.7, § 6.10 only applies when a subcontractor submits a change request that is frivolous or made in bad faith.  See Wescott v. Warden, New Hampshire State Prison, --- A.3d ---, No. 2022-0562, 2024 NH 56, 2024 WL 4469345, at *2 (N.H. Oct. 11, 2024) ("When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole.").  IPS has not demonstrated that either of those circumstances occurred here.[2]

Therefore, IPS's motion for an award of fees and costs is denied to the extent it is based on § 6.10.

---

[2] Notably, IPS moved to dismiss Kinetics's breach of contract claim for unapproved change requests on procedural grounds as premature, arguing that the parties were continuing to process the claims.  Doc. no. 15, at 7.  IPS did not assert that the change requests had no merit.  Later, the court granted summary judgment in IPS's favor on claims for unapproved change requests that were not timely submitted to IPS, but IPS did not establish that the unapproved change requests had no merit.  Doc. no. 89.  Before trial, IPS and Kinetic stipulated that IPS owed Kinetic certain amounts for approved change orders that it had not paid because it claimed back charges against those amounts.  Doc. no. 131.  In sum, these circumstances do not show that Kinetic submitted change order requests that had no merit or that were based on materially inaccurate assertions.

B.  Section 17.7 – All Parties

To be entitled to an award of attorneys' fees and costs under § 17.7, the moving party must be the "successful or prevailing Party." IPS argues that it is the successful or prevailing party with respect to Kinetics because the amount awarded to Kinetics was significantly less than Kinetics sought. Lonza argues that it is the successful or prevailing party with respect to its counterclaims against Kinetics. And, finally, Kinetics argues that it is the successful or prevailing party with respect to IPS because the jury found in its favor and awarded it more than $440,000 in damages. Neither "successful" nor "prevailing" is defined in the Subcontracts.

1.  Successful or Prevailing Party

In the absence of a contractual definition of "successful or prevailing," the court looks to New Hampshire's principles of contract interpretation to determine the meaning of those terms. "In interpreting a contract, [the court] consider[s] the contract as a whole, and [the court] give[s] words their ordinary meaning unless it appears from the context that the parties intended a different meaning." Moore v. Grau, 171 N.H. 190, 194 (2018); see also Com. Park Condo. Ass'n v. Little Deer Valley, LLC, 176 N.H. 517, 529 (2024). Nothing in the Subcontracts suggests an intent to

apply a meaning other than the ordinary meaning of "prevailing or successful party."

What then is the ordinary meaning of successful or prevailing? Kinetics relies on cases construing "prevailing party" for purposes of federal statutory fee-shifting provisions. IPS also relies on the interpretation of "prevailing party" for purposes of federal fee-shifting statutes, along with the definition of "prevailing party" provided in Black's Law Dictionary, (12th ed. 2024). In its objection to Kinetics's motion, however, IPS challenges Kinetics's reliance on the federal statutory standard (despite its own prior reliance), but provides no authority for a different interpretation of "prevailing party" in a fee-shifting contract clause.[3] Lonza contends that the federal statutory standard does not apply and cites dictionary definitions for successful and prevailing, arguing that successful means favorable termination of attempts or endeavors and prevailing means predominant. Doc. no. 156-1, at 5.

---

[3] IPS cites Shlasinger v. Yarrington, 2018 DNH 167, 2018 WL 3873235, (D.N.H. Aug. 15, 2018), to assert that the fee shifting provision in the Subcontracts was intended "to deter claims and meritless change proposals by introducing financial risk for a nefarious subcontractor who wrongly seeks to double the price of the subcontracts." Doc. no. 167, at 3. The cited section of Shlasinger, however, states that the contractual fee shifting provision in that case did not apply, but even if it did, "[t]he term 'prevailing party,' whether arising in statute or contract, is a 'legal term of art.'" Id. at *15.

Black's Law Dictionary defines "prevailing party" and "successful party" as follows: "A party in whose favor a judgment is rendered, regardless of the amount of damages awarded."[4] Black's Law Dictionary (12th ed. 2024). As authority, the dictionary cites Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 603 (2001), which addresses the phrase "prevailing party" for purposes of federal fee-shifting statutes. In Buckhannon, the Supreme Court held that "prevailing party" is a term of art that has a "clear meaning" for purposes of fee-shifting statutes. Id. at 603 and 610. Given that history of the term "prevailing party," its status as a term of art, and the absence of a different definition in the Subcontracts, the parties are presumed to have understood and intended the same meaning for "prevailing party" that is given to the term for purposes of federal fee-shifting statutes. See Shlasinger, 2018 WL 3873235, at *15; see also Tradespot Markets Inc. v. ICARO Media Grp. Inc., No. 21-62295-CIV, 2022 WL 5198661, at *2 (S.D. Fla. Sept. 12, 2022), report and recommendation adopted, No. 21-CIV-62295-RAR, 2022 WL 5170893 (S.D. Fla. Oct. 5, 2022); Waas v. Red Ledges Land Dev., Inc., No. 20-CV-00580-TC-DBP, 2022 WL 35717, at *2 (D. Utah Jan. 3,

---

[4] As is further discussed below, while the amount of damages does not determine prevailing party status, a judgment that awards enforceable relief, damages or another remedy, is required for prevailing party status. See Buckhannon, 532 U.S. at 603-604.

8

2022); In re DB Holdings Liquidation, Inc., 592 B.R. 539, 550 (D. Del. 2018).

Prevailing party status is achieved "when a party has prevailed on the merits of at least some of his claims." Buckhannon, 532 U.S. at 603–04. "[E]ven an award of nominal damages suffices under this test." Id. (citing Farrar v. Hobby, 506 U.S. 103 (1992)). "A plaintiff prevails, we have held, when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."[5] Lefemine v. Wideman, 568 U.S. 1, 4 (2012) (emphasis added) (internal quotation marks omitted); see also Farrar, 506 U.S. at 111 (holding

---

[5] IPS presumes that an award of fees and costs to a "prevailing and successful party" under § 17.7 applies to both plaintiffs and defendants. In the context of fee shifting under 42 U.S.C. § 1988, however, the standard for a prevailing defendant is more demanding than for a prevailing plaintiff. Hughes v. Rowe, 449 U.S. 5, 15 (1980); Tang v. R.I. Dep't of Elderly Affairs, 163 F.3d 7, 13 (1st Cir. 1998); accord McMenamon v. Shibinette, No. 21-CV-479-PB, 2023 WL 3093475, at *1 (D.N.H. Apr. 26, 2023). A court may award fees to a prevailing defendant only if it "finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Hughes, 449 U.S. at 15. "In determining whether this standard has been met, the court must assess the claim at the time the complaint was filed, and must avoid the post-hoc reasoning that, because the plaintiff did not ultimately prevail, the claim must have been frivolous, unreasonable or without foundation." Tang, 163 F.3d at 13. The circumstances in this case would not support finding IPS a prevailing defendant under the § 1988 standard.

9

that a prevailing "plaintiff must obtain at least some relief on the merits of his claim"); Black's Law Dictionary, at 1349 (12th ed. 2024) (quoting Lefemine, 568 U.S. at 4).

Recently, the Supreme Court focused on when, in the course of a case, prevailing party status may be determined. Lackey v. Stinnie, 604 U.S. ---, --- S. Ct. ---, No. 23-621, 2025 WL 594737 (U.S. Feb. 25, 2025). The Court concluded "that prevailing party status does not depend upon the degree of success at different stages of the suit, but whether, at the end of the suit, or other proceeding, the party who has made a claim against the other, has successfully maintained it." Id. at *4 (internal quotation marks omitted). "A prevailing party, in other words, is the party ultimately prevailing when the matter is finally set at rest." Id. (internal quotation marks omitted).

### 2. Kinetics and IPS

Before trial, IPS and Kinetics stipulated to the amount IPS owed Kinetics based on approved change orders, $2,227,028.98, subject to IPS's defense that it properly offset that full amount by valid back charges. The jury found that IPS properly back charged some (but not all) of that amount and awarded Kinetics $444,875.53 in damages on its breach of contract claim. Judgment was entered in Kinetics's favor on that amount. Based on the

judgment entered in this case, Kinetics is the prevailing party with respect to its claim against IPS.

IPS argues, nevertheless, that it is the prevailing party because it was successful on its motions for summary judgment, which resolved Kinetics's claims for unapproved change requests against Kinetics, and it was successful in justifying most of its back charges. IPS argues that because it successfully opposed 97% of the damages that Kinetics was seeking at the beginning of the case, it is the prevailing party. As the cited cases establish, however, prevailing party status is determined at the end of the case, based on the judgment entered.

To be sure, judgment was entered in Kinetics's favor on some, but not all, of its claims, and it was awarded only a portion of the damages it was seeking. But, the degree of success does not determine eligibility for prevailing party status - a prevailing party may succeed on only some of its claims or even be awarded only nominal damages, as long as the judgment "materially alters the legal relationship between the parties." Farrar, 506 U.S. at 114. IPS cites no case that holds a defendant's partial success on summary judgment or in defending against part of the plaintiff's damages request confers upon it prevailing party status, despite a final judgment in favor of and awarding damages to the plaintiff. See also Lackey, 2025 WL 594737, at *4 (prevailing party status determined at the end of the case).

Kinetics is the prevailing party for purposes of an award of fees and costs from IPS under § 17.7.

### 3. Lonza and Kinetics

Lonza moves for an award of fees and costs from Kinetics under § 17.7 based on the jury's verdict that found Kinetics breached the Subcontracts but awarded Lonza no damages. Kinetics opposes the motion, arguing that Lonza is not a party to the Subcontracts for purposes of an award under § 17.7 and, in any event, is not a prevailing party. The court need not resolve the dispute about Lonza's third-party beneficiary status, because Lonza is not properly viewed as a prevailing party in this case.

Although the jury found in Lonza's favor on its breach of contract claim, the absence of a damages award or any enforceable relief at all renders that verdict a pyrrhic victory at best. "A party 'prevails' when a court conclusively resolves his claim by granting enduring relief on the merits that alters the legal relationship between the parties." Lackey, 2025 WL 594737, at *8. That is, "to qualify as a prevailing party . . ., a plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment

against the defendant from whom fees are sought . . . ." Farrar, 506 U.S. at 111.

Lonza did not obtain an enforceable judgment against Kinetics – the jury's verdict requires nothing from Kinetics and, as such, does not alter Kinetics's relationship with Lonza in any respect, materially or otherwise. For that reason, Lonza is not a "prevailing party" and is not eligible for an award of fees and costs under § 17.7. Further, even if the bare verdict were sufficient to confer prevailing party status, which it is not, it would not be reasonable to award fees and costs in light of Lonza's complete lack of material success. See, e.g., Farrar, 506 U.S. at 114.

C.  Award of Fees and Costs to Kinetics

Kinetics asks for an award of $240,894.00 in attorneys' fees and $38,729.85 in costs, which represents compensation for less than all of the time counsel spent on the case. Kinetics's counsel submitted his affidavit along with a statement of billing rates and contemporaneous billing records for his firm's work on this case from May 5, 2022, through November 30, 2024.

Section 17.7 requires that the fees awarded be reasonable. Because this is a diversity case, the court assesses the reasonableness of the fee award based on New Hampshire law. SRS

Distribution Inc. v. Southers Constr. Inc., No. 24-CV-50-PB-AJ, 2024 WL 5010150, at *4 (D.N.H. Nov. 20, 2024), report and recommendation adopted, No. 24-CV-50-PB-AJ, 2024 WL 5007364 (D.N.H. Dec. 6, 2024). For that purpose, under New Hampshire law, courts consider "the amount involved, the nature, novelty, and difficulty of the litigation, the attorney's standing and the skill employed, the time devoted, the customary fees in the area, the extent to which the attorney prevailed, and the benefit thereby bestowed on his clients." Town of Barrington v. Townsend, 164 N.H. 241, 250, 55 A.3d 952 (2012).

There is no dispute in this case about the nature of the litigation, counsel's standing and skill, and the customary fees. The primary issue is the extent to which Kinetics prevailed and what a reasonable award of fees should be in light of that limitation.

Kinetics's recovery in this case was modest compared to the amount it originally sought. In the complaint, Kinetics claimed $13,973,898.26 from IPS for unapproved change requests and amounts approved but not paid because of back charges. Through summary judgment, the claims for unapproved change requests were dismissed. At trial, Kinetics sought $2,227,028.98 that IPS had retained as back charges from approved change orders. Of that amount, the jury awarded Kinetics $444,875.53.

14

Kinetics acknowledges its lack of complete success and states that it has trimmed the requested attorneys' fees accordingly.  Kinetics states that it did not include fees and costs attributable to its original counsel who represented it until March 30, 2022.  Kinetics also states (and demonstrates with highlighting on the billing records) that it did not include time spent on losing efforts, including opposing summary judgment and defending its expert witness.  IPS objects to the amount requested, arguing that Kinetics did not remove all of the fees and costs attributable to unsuccessful work and argues that most of the time counsel spent on the case was for the unapproved change requests.

The court is not persuaded that all of the work done by Kinetics's counsel prior to September 4, 2024, was done exclusively in connection with the unapproved change request issues, as IPS urges.  Given IPS's own argument that the issues in this case are not analytically severable for purposes of discounting or offsetting the amount of attorneys' fees and costs spent on specific issues, it is likely that the earlier work was also related to or inseparable from the back charge issues.[6]  Given the specific instances of time and expenses for

---

[6] In support of its motion for an award of nearly a million dollars in fees and costs, IPS argued, citing Halifax-American Energy Co., LLC v. Provider Power, LLC, 170 N.H. 569, 589

15

unsuccessful matters that IPS cites, and that can be identified based on the billing record, $4,675.00 in fees and costs is deducted from the amount Kinetics requests. The court declines to consider IPS's more general objections to time spent on depositions that IPS contends were not entirely focused on the back charges issues.

    Kinetics is seeking all of its fees and costs attributable to the back charges issue, which, with the above deduction,

---

(2018), that the work done on the unapproved change requests is not severable from the work on the back charges issues. Doc. no. 154, at 5. For that reason, IPS asserted, its counsel's work on all of the issues overlapped and could not be apportioned for purposes of a fee award. Based on that theory, IPS argued it was entitled to all of its fees without offset for issues on which Kinetics prevailed. In its objection to Kinetics's motion for an award of fees and costs, IPS first argues that certain depositions and other work may be separated as not material to the back charges issues, but it then again asserts that Kinetics's invoices show that the issues are not separable for purposes of subtracting work done on nonsuccessful issues. Apparently, IPS intends nonseverability to support a fee reduction of 97% - based on a calculation that Kinetics was awarded only 3% of the damages it originally sought.

    When "claims share a common core of facts that make severance impracticable and unreasonable" and when "the facts relevant to each claim overlap significantly, and the investigation and work performed to prosecute one claim necessarily related to the others," the court may decline "to apportion the attorney time consumed in preparing and proving [separate claims.]" Id. (internal quotation marks omitted). Under IPS's theory of nonseverability, Kinetics would be entitled to all of its fees and costs without apportionment related to work done on particular issues. Kinetics, however, does not pursue that result and has presented its fees and costs with unsuccessful work subtracted.

total $242,256.85. Kinetics, however, prevailed, on only 21% of the back charges issue: the back charges on the approved change orders amounted to $2,106,314.75 and the jury awarded $444,875.53 to Kinetics as the amount improperly withheld. In the circumstances of this case, it is appropriate to further reduce the award to 21% of the fees and costs incurred on the back charges issue, which is $50,873.94.

## Conclusion

For the foregoing reasons, Kinetics's motion for fees and costs (document no. 166) is granted. IPS's motion and Lonza's motion for fees and costs (document nos. 154 and 156) are denied.

Kinetics is awarded $50,873.94 in fees and costs.

The clerk of court shall enter an amended judgment to reflect that result and close the case.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

March 24, 2025

cc: Counsel of Record